# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

TORREY DEON ABRAMS, )
)
              Petitioner, )
)
      vs. )     **Case No. CIV-09-554-M**
)
GREG WILLIAMS, )
)
          Respondent. )

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing pro se, brings this action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). Respondent has filed a response to the petition together with the Original Record (O.R.) and the state court trial transcript (Tr.). Petitioner did not file a reply and the matter is at issue. For the following reasons, it is recommended that the petition be denied.

## Background

Petitioner was charged by information with second degree murder, after former conviction of three felonies in the District Court of Comanche County, Case No. CF-2005-197. O.R., pp. 1-4. Petitioner waived his right to jury trial, and following a bench trial, the court found Petitioner guilty of the lesser offense of first degree manslaughter, after former conviction of three felonies, and sentenced Petitioner to twenty-five years imprisonment. Tr.Vol.III, p. 105. Petitioner filed a direct appeal, challenging only the sufficiency of the

evidence supporting his conviction. Response, Ex. 1. In a summary opinion the Oklahoma Court of Criminal Appeals (OCCA) affirmed Petitioner's conviction. Response, Ex. 3 (*Abrams v. State*, Case No. F-2007-34).

Petitioner sought post-conviction relief in the state district court, alleging for the first time that both trial and appellate counsel rendered ineffective assistance and that the medical and toxicology report introduced at trial was unreliable. Response, Ex. 4 (Application for Post-Conviction Relief). The district court denied post-conviction relief, Response, Ex. 5, and the OCCA affirmed the trial court's decision, Response, Ex. 6.

**Petitioner's Claims**

Petitioner raises four grounds for habeas relief. In Ground One, Petitioner challenges the sufficiency of the evidence supporting his conviction of first degree manslaughter. Petition, p. 5.[1] In Ground Two, Petitioner alleges that trial counsel rendered ineffective assistance. *Id.* In Ground Three, Petitioner alleges that the medical and toxicology report was unreliable as was the testimony relating to this report. *Id.*, p. 6. In his final and fourth ground for relief, Petitioner alleges ineffective assistance of appellate counsel. *Id.*

Respondent contends that Petitioner is not entitled to habeas relief on his claim of insufficient evidence in Ground One because he fails to show that the OCCA's resolution of this claim was contrary to, or based upon an unreasonable application of, clearly established federal law. Response, pp. 4-13. Respondent further contends that Petitioner's claims in

---

[1]The form habeas petition begins on page two.

Grounds Two and Three are procedurally barred from federal habeas review and that Petitioner cannot establish ineffective appellate counsel either as cause for his procedural default or as an independent basis for habeas relief in Ground Four. *Id.*, pp. 13-33.

## ANALYSIS

### Standard Governing Habeas Review

The applicable standard for habeas review depends on how the state appellate court treated the underlying issue. Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) this court may grant a petitioner habeas relief only if a state court adjudication on the merits has resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). *See Turrentine v. Mullin*, 390 F.3d 1181, 1188 (10th Cir. 2004). Under this standard, judicial review is directed to the result of the state appellate court's decision, not its reasoning. *See Gipson v. Jordan*, 376 F.3d 1193, 1197 (10th Cir. 2004) ("[W]e defer to the [state court's] decision unless we conclude that its result - not its rationale - is 'legally or factually unreasonable.'") (citing *Aycox v. Lytle*, 196 F.3d 1174, 1178 (10th Cir. 1999)).

A state court decision is "contrary to" clearly established federal law for purposes of § 2254 if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from" the result reached by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362,

405-406 (2000). A state court decision involves an "unreasonable application" of federal law if "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[T]he AEDPA's conception of objective unreasonableness lies 'somewhere between clearly erroneous and unreasonable to all reasonable jurists.'" *See House v. Hatch*, 527 F.3d 1010, 1019 (10th Cir. 2008) (quoting *Maynard v. Boone*, 468 F.3d 665, 670 (10th Cir. 2006)), *cert. denied*, 129 S.Ct. 1345 (2009). "Thus, 'only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254.'" *Id.* (quoting *Maynard*, 468 F.3d at 671).

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding . . . ." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Thus, the AEDPA imposes a "highly deferential standard for evaluating state-court rulings," and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, __U.S.__, 130 S.Ct. 1855, 1862 (2010). In conducting this deferential inquiry, the Court presumes that the state court factual findings are correct, and Petitioner bears the burden of rebutting this presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Smith v. Mullin*, 379 F.3d 919, 924-25 (10th Cir. 2004). Finally, "[i]f a claim was not decided on the merits by the state courts (and is not otherwise procedurally barred), [the federal court] may exercise [its] independent judgment in deciding the claim." *Hain v. Gibson*, 287 F.3d 1224, 1229 (10th Cir. 2002).

## I. __Claim Raised on Direct Appeal - Ground One__

In Ground One, Petitioner alleges, as he did on direct appeal, that the evidence was insufficient to support his conviction of first degree manslaughter. Petition, p. 5. Specifically, Petitioner contends that the State failed to prove that Petitioner's conduct in fact caused the victim's death because there were other factors outside of Petitioner's control which could have caused the death and because the medical reports were inconclusive on this issue. *Id.*

The "clearly established federal law" applicable to a sufficiency of the evidence claim is set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), in which the Supreme Court held that, in evaluating the constitutional sufficiency of evidence supporting a criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* In applying this standard, the Court "may not weigh conflicting evidence nor consider the credibility of witnesses," but must "'accept the jury's resolution of the evidence as long as it is within the bounds of reason.'" *Messer v. Roberts*, 74 F. 3d 1009, 1013 (10th Cir. 1996) (quoting *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993)). Both direct and circumstantial evidence is considered in determining whether evidence is sufficient to support a conviction. *Lucero v. Kerby*, 133 F.3d 1299, 1312 (10th Cir. 1998). The OCCA applied the *Jackson* standard in

deciding Petitioner's sufficiency of the evidence claim on direct appeal,[2] and thus, this Court's review is limited by the AEDPA to an inquiry as to whether the OCCA's application of *Jackson* was unreasonable. *See Brown v. Sirmons*, 515 F.3d 1072, 1089 (10th Cir. 2008). In determining whether the OCCA was reasonable in applying the *Jackson* standard to the facts of Petitioner's case, the Court must begin with Oklahoma law defining the substantive elements of the crime. *Jackson*, 443 U.S. at 309, 324 n.16.

Under Oklahoma law, "[h]omicide is misdemeanor manslaughter when it is perpetrated without a design to effect death, by a person engaged in the commission of a misdemeanor." *Bell v. State*, 172 P.3d 622, 623 (Okla. Crim. App. 2007) (citing Okla. Stat. tit. 21, § 711).[3] Further, the manslaughter statute "does not distinguish among type or

---

[2]The OCCA reviewed Petitioner's sufficiency of the evidence claim citing state law and applying the following standard: "[w]hen reviewing sufficiency challenges [this Court] will review the direct and circumstantial evidence, crediting all inferences that could have been drawn in the State's favor, to determine if any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt." Response, Ex. 3, pp. 1-2 (citing *Davis v. State*, 142 P.3d 437, 455 (Okla. Crim. App. 2006); *Easlick v. State*, 90 P.3d 556, 559 (Okla. Crim. App. 2004); and *Spuehler v. State*, 709 P.2d 202, 203-04 (Okla. Crim. App. 1985)). As the Tenth Circuit has found, this standard comports with *Jackson*. *See Turrentine v. Mullin*, 390 F.3d 1181, 1203 (10th Cir. 2004) ("Although the OCCA did not directly cite *Jackson*, it applied an analogous state standard . . . ; [w]e therefore ask whether the OCCA's decision was contrary to or involved an unreasonable application of *Jackson*, or whether it was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1)-(2).").

[3]"Oklahoma provides three definitions for first-degree manslaughter: misdemeanor-manslaughter, heat of passion manslaughter, and manslaughter by resisting a criminal attempt." *Bland v. Sirmons* 459 F.3d 999, 1015 (10th Cir. 2006) (citing Okla. Stat. tit. 21, § 711). Although the trial court did not identify the applicable provision of the manslaughter statute under which Petitioner was convicted, on direct appeal Petitioner
(continued...)

category of misdemeanor." *Id.* Petitioner argued on direct appeal that his conviction for misdemeanor manslaughter could not be upheld because the evidence at trial failed to establish that his conduct, assault and battery, was the proximate cause of Mr. Collins' death. Response, Ex. 1, p. 20.

In rejecting Petitioner's insufficient evidence claim on direct appeal, the OCCA made the following findings:

> In the instant case, the State presented evidence through eyewitness testimony that [Petitioner] was involved in multiple beatings of the victim. [Petitioner]'s own testimony was that he only had one altercation with the victim inside the residence and that he pushed him by the throat and hit him three or four times in the face. [Petitioner] also testified that one of the eyewitnesses delivered multiple blows to the victim with a stick or ax handle. The medical examiner testified that she found no evidence of an instrument used to inflict the injuries on the victim's body and that he died from multiple blunt force trauma injuries.

Response, Ex. 3, p. 2. The OCCA concluded that "the trier of fact could infer from the evidence that [Petitioner] beat the victim to death" and "the fact that [Petitioner] presented a different version of events does not change the verdict." *Id.*

Having reviewed the transcript of Petitioner's trial and considered the evidence as summarized hereafter, the undersigned finds that the OCCA's rejection of this claim of insufficiency of the evidence is neither contrary to nor an unreasonable application of the

---

[3](...continued)
argued that the evidence was insufficient to convict him of misdemeanor manslaughter. Response, Ex. 1, pp. 17-23. Neither the State in its response nor the OCCA in its opinion treated Petitioner's conviction as anything other than misdemeanor manslaughter which is defined as a homicide "[w]hen perpetrated without a design to effect death by a person while engaged in the commission of a misdemeanor." Okla. Stat. tit. 21, § 711.

*Jackson* standard.

On May 8, 2005, the body of William Collins was found in the parking lot of a convenience store in Lawton, Oklahoma; medical testimony at trial indicated his death had been caused by multiple blunt force trauma.[4]  Tr.Vol.II, pp. 168, 179, 247.  Leona Sliter testified that on the evening of May 6, 2005, she and Collins were partying at a motel, that they called Petitioner requesting to buy crack cocaine from him, and that at some point Collins bought cocaine from Petitioner on credit.  Tr.Vol.I, pp. 71-74.  Later that evening Ms. Sliter went to the home of Scott May and consumed more drugs. Tr.Vol.I, pp. 80. According to Ms. Sliter, the next day, Petitioner and Collins came to May's home.   Sliter testified that when Petitioner requested that Collins pay him $300.00 for the cocaine, Collins picked up a piece of crack and stated "here's your money," at which time Petitioner became upset and began choking and striking Collins.  Tr.Vol.I, pp. 87-90.  She testified that the two men left in Collins's car with Petitioner in the driver's seat, and that when they eventually returned to the house, Petitioner again struck Collins, knocking him into a futon.  Tr.Vol.I, pp. 91-98.  Sliter testified that Petitioner then decided to get the money Collins owed him from an ATM.

---

[4]The medical examiner testified that Collins's body had abrasions and contusions on the head, left forehead, both cheeks, lower lip and left side of the neck area.  She also testified that there was bleeding inside Collins's cranial cavity and brain swelling; a broken hyoid bone; a hemorrhage of the left eye; a fractured sternum; fractured ribs on the left side; bruised heart; abrasions on the left leg, front of the right arm, left side of the back left hip and left thigh; and an abraded contusion on the back of the right forearm and back of the right shoulder and arm.  Tr.Vol.II, pp. 166-67.  She further testified that Collins had gray-white paint on part of his body, including his head, neck, extremities and on his clothing.  *Id.*, pp. 165, 168, 171, 175.

Tr.Vol.I, p. 100. Sliter decided to get the money so Petitioner would leave Collins alone. *Id.* Petitioner told her that if she did not return, he would kill Collins. Tr.Vol.I, p. 102. According to Sliter, she got Collins's ATM card from his wallet, and he wrote down his pin number for her. *Id.* Sliter further testified that when she returned to May's home, Petitioner was gone but she found Collins lying on the floor of a back room with whitish paint on his face, unresponsive and making snoring sounds. Tr.Vol.I, pp. 105-06. She testified further that Petitioner later returned to the house and eventually wrapped Collins in a blanket and placed him in the trunk of the car. Tr.Vol.I, pp. 107-17. Ms. Sliter testified that she could hear Collins making a snoring sound, that Petitioner then directed her to get into another car, and that Petitioner drove away in Collins's car. Tr.Vol.I, pp. 121-126.

Scott May, who was renting the house where these events took place testified that he was acquainted with Petitioner, Ms. Sliter, and Mr. Collins. Tr.Vol.II, pp 190-91, 198. May testified that he was at his home on Friday, May 6, 2005, and that Petitioner and Ms. Sliter were there when he went to bed some time after midnight. *Id.*, pp.196-97. When he woke up the next morning, Collins, Sliter, and Petitioner were in the front room visiting. *Id.*, p. 198. May testified that when he left the house early Saturday afternoon, a green Mustang was parked outside, and when he returned to his home around 4 p.m., the Mustang was still parked outside and Petitioner and Ms. Sliter were in May's bedroom talking. *Id.,* pp. 201-04. May saw Collins on the floor in the front room and thought he was passed out drunk. *Id.*, pp. 205-07. May left the house again but drove back by his house a few hours later to see if anyone was still there. *Id.*, pp. 208-09. The car was still there so he didn't stop. *Id.* When

9

May and a friend returned to his home about 8 p.m., the car was gone and there was paint spilled everywhere in the house. *Id.*, p. 211. May later learned that Collins had been found dead. *Id.*, p. 214.

Petitioner testified that Collins refused to pay him money owed for cocaine purchased from Petitioner. Tr.Vol.II, p. 275. Petitioner admitted that they started to fight and he forcefully pushed Mr. Collins by the throat to the wall "real hard" and hit him in the face about four to five times until he fell to the floor unconscious. *Id.* p. 276. Petitioner testified that he then woke Collins up by shaking him and throwing water on him. *Id.* After that, the two men again started talking about the money Collins owed Petitioner. *Id.*, pp. 276-77. According to Petitioner, Collins ultimately told Petitioner he would get the money owed to him. *Id.,* p. 277. Petitioner testified that he saw Sliter hitting Collins with a stick that looked like an ax handle. *Id.*, pp. 283-85. The last thing Petitioner remembered hearing Collins say was that he wanted to go to sleep. *Id.,* p. 286. Petitioner testified that he went out on the porch for twenty or thirty minutes while Ms. Sliter remained inside. Tr.Vol.II, p. 287. Petitioner then went back inside the house and had sex with Ms. Sliter. When they went into the back room, they saw Collins lying down with a bucket of paint spilled over him. *Id.,* p. 288. Petitioner thought Collins had knocked the bucket over as he walked from the bed or futon. *Id.* Petitioner tried unsuccessfully to wake Collins and then asked Sliter to get a blanket which he used to wrap around Collins. *Id.,* pp. 290-91. Petitioner put Collins in the trunk of the Mustang. *Id.*, p. 292. He then drove to a convenience store, bought cigarettes, and left the car next to the trash dump at the side of the store. *Id.*, pp. 291-94. Petitioner

10

claimed that Collins was snoring when he put him in the trunk. *Id.,* p. 292.

In summary, the evidence of record included testimony from Sliter, who was an eyewitness, that Petitioner beat Collins, Petitioner's own testimony admitting that he beat Collins and put him in the trunk of his car, and the medical examiner's testimony that Collins died as a result of blunt force trauma. Taken in the light most favorable to the prosecution, such evidence is clearly sufficient to support Petitioner's conviction of first degree (misdemeanor) manslaughter. The undersigned finds that the OCCA's application of the *Jackson* standard was not unreasonable in light of the evidence presented at trial, and that Petitioner has failed to show that the OCCA's rejection of Petitioner's sufficiency of the evidence claim was contrary to or an unreasonable application of applicable Supreme Court law. The undersigned therefore recommends that habeas relief be denied as to Petitioner's claim in Ground One.

## II. Procedural Bar - Grounds Two and Three

Citing *Coleman v. Thompson*, 501 U.S. 722 (1991), Respondent contends habeas relief should be denied on the claims in Grounds Two and Three because such claims were procedurally defaulted in state court based on a state procedural bar rule which is both independent and adequate and Petitioner has failed to making the showing of cause and prejudice or a fundamental miscarriage of justice required for habeas review. Response, pp. 13-15, 29-31. Respondent asserts further that Petitioner's ineffective assistance of appellate counsel fails on the merits both as a substantive claim and as cause for his procedural default and that Petitioner has not demonstrated that this Court's failure to consider his defaulted

claims will result in a fundamental miscarriage of justice.

In a habeas action, federal courts will not review claims that have been defaulted in state courts on an independent and adequate state procedural ground unless the petitioner demonstrates cause for the default and actual prejudice, or alternatively demonstrates a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. "'A state court's finding is considered independent if it is separate and distinct from federal law.'" *Klein v. Neal*, 45 F.3d 1395, 1397 (10th Cir. 1995) (quoting *Brecheen v. Reynolds*, 41 F.3d 1343, 1353 (10th Cir. 1994)). "'A state court's finding is deemed to be adequate if it is applied evenhandedly; that is, if it is strictly or regularly followed.'" *Id.* (quoting *Brecheen*, 41 F.3d at 1353) (internal quotations omitted).

Under Oklahoma law, claims - such as those raised by Petitioner in Grounds Two and Three - which could have been raised on direct appeal but were not are generally procedurally barred from further review. Okla. Stat. tit. 22, § 1086; *see Brecheen*, 41 F.3d at 1349 n.4 ("post-conviction relief is reserved only for the rare set of circumstances where a particular claim 'could not have been raised on direct appeal[]'"). It is clear that the state courts applied this well-established state procedural bar rule in denying review of Petitioner's claims of ineffective trial counsel (Ground Two) and unreliable medical and toxicology reports and testimony (Ground Three). *See* Response, Exs. 5 & 6. The rule applied by the state district court and the OCCA is thus independent of federal law. Such procedural bar rule has generally been held to be an adequate state ground for refusing to review a prisoner's collateral claims that were not asserted in a direct appeal from a conviction. *Odum v. Boone*,

62 F.3d 327, 331 (10th Cir. 1995); *Steele v. Young*, 11 F.3d 1518, 1521-1522 (10th Cir. 1993).

### A.  Ineffective Assistance of Trial Counsel (Ground Two)

Although the OCCA's procedural bar rule is generally an adequate state ground for refusing to review a prisoner's collateral claims that were not asserted in a direct appeal from a conviction, in *English v. Cody*, 146 F.3d 1257, 1263-63 (10th Cir. 1998), the Tenth Circuit held that a procedural rule requiring that an ineffective assistance of trial counsel claim be raised on direct appeal is adequate only if the petitioner had been represented by different counsel at trial and on appeal and the ineffectiveness claim could have been resolved "upon the trial record alone."  In this case, Petitioner did have different counsel at trial and on appeal.  *See* Response, Ex. 3, p. 4.  However, the undersigned cannot say that the issue of ineffective assistance of counsel could have been resolved on the record.  Thus, the undersigned has bypassed the procedural issues and has considered the merits of the ineffective assistance of trial counsel claim.  *See Cannon v. Mullin*, 383 F.3d 1152, 1159 (10th Cir. 2004)("When questions of procedural bar are problematic, and the substantive claims can be disposed of readily, a federal court may exercise its discretion to bypass the procedural issues and reject a habeas claim on the merits.").

Petitioner complains generally that he was "seriously impaired" by trial counsel's ineffective strategy , and he alleges specifically that he was "misadvised" by counsel to waive his right to a jury trial and to testify on his own behalf.  Petition, p. 5.  The Sixth Amendment's right to counsel clause is violated when counsel's performance is deficient and such deficient performance prejudices the defense.  *Strickland v. Washington*, 466 U.S. 668,

687 (1984). The Court recognized, however, that "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. In particular, the Court agreed with the appellate court's conclusion that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91.

The right to a jury trial is fundamental. *See Duncan v. State of Louisiana*, 391 U. S. 145, 149 (1968). However, "in the exercise of a free and intelligent choice, and with the considered approval of the court, [a criminal defendant] may waive trial by jury . . . ." *Adams v. United States*, 317 U. S. 269, 275 (1942). The waiver must be "knowing, intelligent, and voluntary." *United States v. Robertson*, 45 F.3d 1423, 1431 (10th Cir. 1995). The Supreme Court has explained that a waiver is "knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply in general in the circumstances-even though the defendant may not know the specific detailed consequences of invoking it." *United States v. Ruis*, 536 U.S. 622, 629-30 (2002). Even if a criminal defendant "lack[s] a full and complete appreciation of all of the consequences flowing from his [Sixth Amendment] waiver, it does not defeat the State's showing that the information provided to him satisfied the constitutional minimum." *Patterson v. Illinois*, 487 U.S. 285, 294 (1988) (quotation omitted).

Here, the record shows that Petitioner knowingly waived his right to a jury trial. In

14

a hearing the day before trial was set to begin, Petitioner appeared with counsel and testified under oath that he had discussed the upcoming trial with counsel at length and had further discussed his right to present his case to a jury. Response, Ex. 7 (Transcript, Waiver of Jury Trial, held on September 6, 2006), pp. 3-4. Petitioner testified further regarding his agreement with counsel that it was in his best interest to waive his right to go to a jury trial and schedule the case before the judge assigned to the case. *Id.*, p. 4. The court found that Petitioner was knowingly and voluntarily waiving his right to a jury trial. *Id.*, p. 5. "An attorney's decision to waive his client's right to a jury is a classic example of a strategic trial judgment, 'the type of act for which *Strickland* requires that judicial scrutiny be highly deferential.'" *Hatch*, 58 F.3d at 1459 (quoting *Green v. Lynaugh*, 868 F.2d 176, 178 (5th Cir. 1989)), *overruled in part on other grounds*, *Daniels v. United States*, 254 F.3d 1180, 1188 n.1 (10th Cir. 2001) (*en banc*). For such a conscious, tactical decision to rise to the level of constitutional ineffective assistance, "the decision to waive a jury must have been 'completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy.'" *Id.* (quoting *United States v. Ortiz Oliveras*, 717 F.2d 1, 4 (1st Cir. 1983)).

In this case, Petitioner has presented no evidence to undermine the validity of the representations he made when he appeared in open court with his counsel and waived his right to a trial by jury. Thus, the undersigned finds that Petitioner has not overcome the presumption that counsel's strategic choice to try the case to the court rather than a jury was reasonable under the circumstances and that this claim does not merit habeas relief.

Petitioner also contends that trial counsel was ineffective for advising him to testify

on his own behalf. Petition, p. 5. As Respondent correctly points out, Petitioner has failed to develop this claim, either in post-conviction proceedings or in his habeas brief. Response, p. 24. Petitioner's conclusory and factually unsupported allegations are simply insufficient to support a claim that trial counsel was constitutionally ineffective in this regard. *See Cannon v. Gibson*, 259 F.3d 1253, 1262 n. 8 (10th Cir. 2001) ("[C]onclusory assertion that counsel was ineffective, along with a bald reference to *Strickland* . . . is simply not sufficient to preserve this claim."). In any event, the record fails to support Petitioner's claim that trial counsel's advice to testify was deficient or that he was prejudiced by this advice. Through Petitioner's testimony, counsel was able to develop a defense theory that even though Mr. Collins owed Petitioner money, Petitioner did not kill him, rather that Collins' death was a result of either Leona Sliter striking Collins with an ax handle or methanol poisoning. Tr.Vol.II, pp. 276-77, 283-85, 288-90. Moreover, the record shows that trial counsel subjected the prosecution's case to meaningful adversarial testing and was an active legal advocate for Petitioner. Tr.Vol.I, pp. 33-38, 59-63, 126-148; Tr.Vol.II, pp. 149-156, 171-87, 215-28, 254-59. The undersigned agrees with Respondent that counsel developed a defense strategy based on demonstrating that Petitioner's conduct was not a substantial factor in bringing about the death of Collins and that such strategy was entitled to "a heavy measure of deference." *Duckett v. Mullin*, 306 F.3d 982, 996 (10th Cir. 2002) (holding that trial counsel's tactical decision to focus on one defense to the exclusion of another was not unreasonable, and in accordance with the dictates of *Strickland*, would not be second guessed in hindsight by the court). Under these circumstances, the undersigned finds that Petitioner

has failed to overcome the presumption that counsel's advice that Petitioner testify at trial was sound trial strategy.

To the extent Petitioner's assertions that he was "seriously impaired" by counsel's trial strategy and that his attorney "acted more like a witness for the prosecution[,]" Petition, p. 5, are liberally construed as separate claims of ineffective assistance of counsel, such conclusory assertions also fail to state a claim for habeas relief. *See Ruark v. Gunter,* 958 F.2d 318, 319 (10th Cir. 1992)(per curiam)("[N[aked allegations" in a habeas petition are insufficient to establish an entitlement to relief). *See also Mitchell v. City of Moore*, 218 F.3d 1190, 1198-99 (10th Cir. 2000) (finding district court was not required to comb the record in order to find factual support for plaintiff's claims). Even if the petition is broadly construed to include the assertions in Petitioner's post-conviction application that counsel "never discussed the need to hire Petitioner's own medical expert or investigator until nearly trial time" and that he "never developed a trial strategy at all[,]" Response, Ex. 4, attached Brief of Appellant, p. 11, such allegations are insufficient to state cognizable claims of ineffective assistance of counsel. Petitioner offers no factual support regarding the need for or the nature of any potential expert testimony nor does he explain how hiring such expert or investigator would have resulted in a different outcome at trial. Such vague and conclusory allegations of ineffective counsel simply fail to state a cognizable claim for habeas relief. *Ruark*, 958 F.2d at 319.

To the extent the petition is broadly construed to include Petitioner's claim in his post-conviction brief that trial counsel failed to develop testimony of other potential witnesses,

such claim is likewise too vague and speculative to state a claim for habeas relief. Petitioner claims that he informed his trial counsel about a "young woman who said she knew [Petitioner] didn't kill Mr. Collins, because on the night of his death, a guy she knew by name came by her house in bloody clothes, wanting to change and told her he had just finished fighting Mr. Collins." Response, Ex. 4, attached Brief of Appellant, p. 12. Although Petitioner admits that counsel subpoenaed this woman,[5] he concludes that counsel "did not pursue this as he should have, especially when considering this was exculpatory evidence." *Id.* Petitioner has not at any time identified this man who allegedly fought with Collins and then came to this unidentified woman's home.[6] Counsel's failure to call such potential, unidentified witnesses to testify does not rise to the level of constitutionally deficient performance nor has Petitioner shown that he was prejudiced by counsel's actions in this regard. Accordingly, the undersigned finds that Petitioner has failed to show that

---

[5]Although Petitioner does not identify this woman, as Respondent notes, the record includes a subpoena to Keeva Johnson to appear and testify on behalf of Petitioner. *See* Response, Ex. 8 (subpoena to Keeva Johnson to testify in Case No. CF-2005-197, the original record, p. 154). Based on trial counsel's announcement to the court that a female defense witness who had been served with a subpoena would not be called, it appears to the undersigned that Ms. Johnson may be the potential witness. Response, Ex. 7 (Tr.Vol. III, p. 82).

[6]Petitioner also alleged that a similar story was related to him by a friend, Dominique Young, who told Petitioner "that her aunt was there when the guy came by bloody wanting to clean-up." Response, Ex. 4, attached Brief of Appellant, p. 13. However, Petitioner does not allege that he informed his attorney of Ms. Young's version of events nor does he demonstrate that such testimony would have identified another possible perpetrator involved in Mr. Collins' death.

counsel's strategy was deficient nor has he shown "that counsel's errors were so serious so as to deprive the defendant of a fair trial." *Strickland*, 466 U.S. at 687. *See also United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (rejecting pro se conclusory allegations of ineffective assistance of counsel); *James v. Cody*, No. 96-6170, 1996 WL 536522, at \*1 (10th Cir. Sept. 23, 1996) (unpublished op.) (conclusory allegations without articulated facts failed to support claim that trial or appellate counsel's performance fell below an objective standard of reasonableness or that their representation prejudiced him in any way). Therefore, the undersigned finds that habeas relief should be denied as to Petitioner's ineffective assistance of trial counsel claim.

### B. <u>Reliability of Medical and Toxicology Report (Ground Three)</u>

In Ground Three Petitioner alleges that he was unfairly prejudiced because the medical and toxicology report was unreliable as was the testimony relating to the report. Petition, p. 6. Respondent asserts that this claim was defaulted in state court because it could have been asserted on direct appeal but was not and that Petitioner has not demonstrated the cause and prejudice or fundamental miscarriage of justice required to excuse his procedural default, and therefore this claim is procedurally barred from federal habeas review.

As previously discussed, claims that have been defaulted in state court on an independent and adequate state procedural ground are barred from federal habeas review unless the petitioner demonstrates cause and prejudice or a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. Petitioner did not file a reply and thus does not dispute Respondent's assertion that the claim Petitioner raises in Ground Three was defaulted in state

court on an independent and adequate state procedural ground.  Nor has Petitioner addressed the issues of cause and prejudice or fundamental miscarriage of justice.  However, in Ground Four of the habeas petition, Petitioner does raise a substantive claim of ineffective assistance of appellate counsel.  Petition, p. 6; *see also* Response, Ex. 4, attached Brief of Appellant, p. 19 (alleging that he did not raise his claim concerning the reliability of the medical/toxicology report on direct appeal due to the ineffective assistance of appellate counsel.  The undersigned has therefore liberally construed the petition to assert ineffective assistance of appellate counsel as cause to excuse this procedurally defaulted claim.

### Ineffective Assistance of Appellate Counsel as Cause for Default

"Attorney error amounting to constitutionally ineffective assistance of counsel constitutes 'cause' for a procedural default." *Hickman v. Spears*, 160 F.3d 1269, 1272 (10th Cir. 1998).  "Because the same legal standards govern [a habeas] petitioner's underlying claim of ineffective assistance of counsel and his closely related burden to show cause for his state law procedural default, [the reviewing court] must determine whether [the] petitioner has shown cause concurrently with the merits of his ineffective assistance of counsel claim." *Id.* at 1273.

In order to show ineffective assistance of appellate counsel, Petitioner must satisfy the familiar two-part test for ineffective assistance established in *Strickland v. Washington*, 466 U.S. 668, 688 (1984).  Under *Strickland*, Petitioner "must establish that (1) counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been

different." *Hain v. Gibson*, 287 F.3d 1224, 1231 (10th Cir. 2002). Application of *Strickland* to an ineffective assistance of appellate counsel claim requires the Court to "look to the merits of the omitted issue." *Id.*

> [I]n analyzing an appellate ineffectiveness claim based upon the failure to raise an issue on appeal, "we look to the merits of the omitted issue," generally in relation to the other arguments counsel did pursue. If the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance; if the omitted issue has merit but is not so compelling, the case for deficient performance is more complicated, requiring an assessment of the issue relative to the rest of the appeal, and deferential consideration must be given to any professional judgment involved in its omission; of course, if the issue is meritless, its omission will not constitute deficient performance.

*Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003) (quoting *Neill v. Gibson*, 278 F.3d 1044, 1057 (10th Cir. 2001)); *accord Miller v. Mullin*, 354 F.3d 1288, 1298 (10th Cir. 2004) (citations omitted). Therefore, unless Petitioner demonstrates a reasonable probability that the omitted claim would have resulted in Petitioner obtaining relief on appeal, his claim of ineffective assistance of appellate counsel is without merit and cannot serve as cause to excuse the procedural default of such claim. *See Neill*, 278 F.3d at 1057. Having reviewed the entire record, the undersigned finds that Petitioner has failed to make the necessary showing that his claim regarding the alleged unreliability of the medical and toxicology report would have resulted in a different outcome had it been raised on appeal.

In support of this claim Petitioner asserts: "[t]he medical reports and toxicology reports and testimony were more prejudicial than probative as required by law in order to be reliable. And the officers of the court should not have given these reports and testimonies

the reliability they were given." Petition, p. 6. On appeal of the denial of his post-conviction application, Petitioner asserted that such evidence was inconclusive, that it was "six months before the report was submitted to the defense[,]" that the report "failed to reveal any of the drugs, alcohol, or methanol that witnesses verified to the ingestion of by Mr. Collins[,]" and that "the process was somehow contaminated." Response, Ex. 4, attached Brief of Appellant, p. 17.

The undersigned assumes the medical and toxicology report referenced by Petitioner is the Report of Investigation by the Medical Examiner (commonly called an autopsy report) which appears in the record as State's Exhibit 17, Tr.Vol.III, p. 115.[7] The only witness to testify regarding this report was the author of the report, Dr. Inas Yacoub, a medical doctor employed by the office of the Chief Medical Examiner. Tr.Vol.II, p. 161. Defense counsel stipulated to Dr. Yacoub's qualifications as an expert witness, which qualifications included board certification in anatomical medical pathology and forensic pathology. *Id.*, p. 162. On direct examination Dr. Yacoub testified that her examination of Collins's body revealed "gray-white paint on the body, on the head, and the neck and extremities and on the clothes." *Id.*, p. 165. She also observed numerous abrasions and contusions on the head, forehead, both cheeks, lower lip, and left side of the neck. *Id.* Dr. Yacoub testified that the "injuries on the head externally were associated with the injuries on the head internally and bleeding inside the cranial cavity and brain swelling." *Id.* She further noted fractures of the breast

---

[7]The report was admitted without objection. Tr.Vol. II, p. 188.

bone and several ribs as well as the fracture of the hyoid bone at the base of the tongue with hemorrhage. *Id.,* p. 167. The doctor also testified that there was hemorrhage in the left eye which is the result of "pressure applied to the neck or blunt force trauma to the neck . . . ." *Id.* Dr. Yacoub testified that in her opinion the probable cause of Mr. Collins's death was multiple blunt force trauma. *Id.,* p. 168. Because the toxicology on the blood, including the bleeding inside the brain, showed methanol, the doctor added methanol poisoning as an "other significant condition." *Id.,* pp. 168, 171. Dr. Yacoub also testified the toxicology did not show ethanol in Collins's body and that she did not test for the presence of cocaine or marijuana. *Id.,* p. 169.

Defense counsel thoroughly cross-examined Dr. Yacoub regarding her finding of blunt force trauma as the probable cause of death and of methanol poisoning as an other significant condition. *Id.*, pp. 171-181. The record reflects that defense counsel questioned the doctor regarding other potential causes of death including methanol poisoning and trauma caused by a weapon such as an ax handle or a fall, and she explained why she rejected causes other than blunt force trauma. *Id.,* pp. 177-187. Thus, defense counsel was able to challenge the reliability of the autopsy report through cross-examination of Dr. Yacoub, and the reliability and relevance of the report was properly submitted to the trier of fact.

Petitioner has failed to demonstrate that he would have obtained relief from his conviction if his claim regarding the unreliability of the toxicology and medical report had been raised on appeal. Therefore, appellate counsel was not ineffective in failing to raise this issue, and ineffective assistance of appellate counsel cannot constitute cause to overcome

Petitioner's procedural default of the issues raised in Ground Three. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986) ("So long as a defendant is represented by counsel who performance is not constitutionally ineffective . . . we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default.").

### Fundamental Miscarriage of Justice

Because Petitioner has not shown that ineffective assistance of appellate counsel will excuse his state court default, he must show that a fundamental miscarriage of justice will occur if the Court does not consider his defaulted claims here. *Coleman*, 501 U.S. at 750. The fundamental miscarriage of justice exception is, however, "an extremely narrow exception, implicated only in 'an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Ballinger v. Kerby*, 3 F.3d 1371, 1375 (10th Cir. 1993) (quoting *Murray v. Carrier*, 477 U.S. at 496). "To prevail, [Petitioner] must identify evidence that affirmatively demonstrates his innocence." *Phillips v. Ferguson*, 182 F.3d 769, 774 (10th Cir. 1999). Petitioner has wholly failed to identify any evidence which affirmatively demonstrates his innocence. Accordingly, it is recommended that relief be denied on Ground Three as procedurally barred.

## III. Ineffective Assistance of Appellate Counsel -Ground Four

In Ground Four of his petition, Petitioner has asserted a substantive claim for habeas relief based on ineffective assistance of appellate counsel. In support of this claim Petitioner asserts:

> Out of all the people who could have made a difference and cleared up the derelict performances that were performed in this case: the appellate attorney could have, but did not. This case is fraught with all kinds of counsel irregularities. A de novo review of counsel's performance will in fact show the derelict performances complained of.

Petition, p. 6.

On appeal from the denial of Petitioner's post-conviction application, the OCCA rejected Petitioner's claim of ineffective assistance of appellate counsel. Response, Ex. 6, p. 2 (citing *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984)). Therefore, this Court's review of Petitioner's substantive claim of ineffective assistance of appellate counsel (Ground Four) is confined to the question of whether that decision was contrary to or involved an unreasonable application of *Strickland*. 28 U.S.C. § 2254(d)(1); *see also Turrentine v. Mullin*, 390 F.3d 1181, 1202 (10th Cir. 2004). As discussed, the claims raised by Petitioner in Grounds Two and Three are without merit, and therefore, appellate counsel's failure to raise such claims on appeal was neither constitutionally deficient assistance nor prejudicial under *Strickland.* Thus, the OCCA's rejection of Petitioner's claim of ineffective assistance of appellate counsel was not contrary to, nor an unreasonable application of, clearly established Supreme Court jurisprudence. Accordingly, Petitioner is not entitled to habeas relief on the basis of his claim in Ground Four.

## RECOMMENDATION

Based upon the foregoing analysis, it is recommended that the petition for a writ of habeas corpus be denied. Petitioner is advised of his right to file an objection to this Report

and Recommendation in accordance with Fed. R. Civ. P. 72(b)(2). Any such objection must be filed with the Clerk of this Court by the 1st day of February, 2011. Petitioner is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

 This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

 ENTERED this 12th day of January, 2011.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE